Not For Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 07-1484

DE MING HUANG,

Petitioner,

v.

MICHAEL B. MUKASEY,[*]
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Circuit Judge,
John R. Gibson,[**] Senior Circuit Judge,
and Lipez, Circuit Judge.

Henry Zhang and Zhang and Associates, P.C., on brief for petitioner.

Flor M. Suárez, Attorney, Office of Immigration Litigation, Civil Division, Peter D. Keisler, Assistant Attorney General, Civil Division, and Joshua E. Braunstein, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

May 8, 2008

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Michael B. Mukasey is substituted for former Attorney General Alberto R. Gonzáles as respondent.

[**] Of the Eighth Circuit, sitting by designation.

**Per Curiam**. De Ming Huang is a citizen of China who overstayed his six-month visa to the United States. He applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), alleging that he suffered persecution from the Chinese government on the basis of his political beliefs. The Immigration Judge ("IJ") denied all of his claims and the Board of Immigration Appeals ("BIA") affirmed without opinion. Huang now petitions for review.[1]

We do not grant a petition for review unless the evidence compels the conclusion, contrary to the IJ's findings, that the petitioner met his burden of proving that he suffered past persecution or has a well-founded fear of future persecution based on one of five enumerated grounds. See 8 U.S.C. § 1101(a)(42)(A); see also Wang v. Mukasey, 508 F.3d 80, 84 (1st Cir. 2007). We review credibility determinations under the substantial evidence standard; an adverse credibility finding is overturned only where the evidence compels it. López de Hincapie v. Gonzáles, 494 F.3d 213, 218 (1st Cir. 2007). The IJ must, however, provide "a specific, cogent, and supportable explanation" for rejecting the testimony as not credible. Heng v. Gonzáles, 493 F.3d 46, 48 (1st

---

[1] Although Huang cites the applicable legal standards for withholding of removal and protection under the CAT, he fails to put forth any arguments in support of those claims. We therefore deem them to be waived and review only his claim for asylum. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

-2-

Cir. 2007) (citing Settenda v. Ashcroft, 377 F.3d 89, 93 (1st Cir. 2004)).

Huang's application is predicated on two groups of events: (1) attacks by the Communist government police and (2) incidents while he was a member of the Chinese armed forces. With respect to both, the IJ concluded that Huang's testimony was not credible because of its vagueness, lack of detail, and inconsistencies, which raise questions as to Huang's candor.

Huang testified that in 1979, when he was working in his family's grocery store, police officers of the Communist government came to the store and accosted and beat his father. Huang alleges that when he stepped in to defend his father, he was arrested and taken to the police station where he was beaten and imprisoned for twenty-four hours without food or water. A similar incident allegedly occurred one month later. Although the police ostensibly came to the store to collect unpaid taxes, Huang alleges that the visits were intended to persecute him and his father on account of their democratic political beliefs.

In making his adverse credibility determination, the IJ observed that Huang had stated that it was his father who was arrested by the police in his written application. Huang did not list any arrests in his application. Yet, he testified that he had been arrested and beaten by the police officers on account of his political beliefs. In addition to highlighting this inconsistency,

the IJ noted that Huang's testimony made only "vague assertions of [his] belief in democracy." Huang argues that the IJ makes too much of minor inconsistencies; we disagree. Indeed, the lack of detail which plagues Huang's testimony and the inconsistencies regarding the 1979 incidents at the family grocery store are not trivial but rather are central to his claim. Whether it was Huang or his father who was beaten, arrested, and then taken to the police station is critical. Moreover, whether the arrests were in retaliation for Huang's political beliefs or simply arrests for interference with a criminal investigation into unpaid taxes is central to Huang's application.

Huang also testified that he suffered mistreatment as a member of the Chinese armed forces. He alleges that he was forced to carry out menial kitchen and latrine duties, beaten, and sprayed with feces. He claims that the treatment was a result of political persecution because others in the armed forces were aware of his political beliefs. Huang testified that he fled the army, without permission, after one year and has lived in hiding for nearly two decades.

Again, the IJ found Huang's testimony to be lacking in important detail and not credible. The IJ found that Huang made only vague assertions of his belief in democracy and his resistance to communism, and the IJ expressed disbelief that Huang was so vocal about his political views while a member of the army. The IJ

-4-

also noted that Huang failed to provide any details regarding the circumstances of his alleged beating or the incidents regarding the spraying of feces. Moreover, despite Huang's assertions of living in constant fear, he appears to have lived rather freely during the twenty years following his leaving the army. He was able to have a family, work in his father's store, and leave the country with a government-issued passport and visa. When questioned about his life during those twenty years, Huang testified inconsistently and with a high degree of vagueness. For example, with respect to his employment during that time, he first stated that he was limited to agricultural work, but then admitted that he worked for his father and averred in his written application that he was a merchant. At his hearing, he then denied being a merchant. Upon review, we conclude that the IJ's adverse credibility determination is supported by the record.

The IJ concluded that even if Huang had testified credibly, none of his allegations rise to the level of persecution. We agree. As we have often stated in the course of these cases, determining whether alleged incidents rise to the level of persecution requires some evidence that the mistreatment is "systematic rather than reflective of a series of isolated incidents." Bocova v. Gonzáles, 412 F.3d 257, 263 (1st Cir. 2005) (citing In re O-Z & I-Z, 22 I. & N. Dec. 23, 26 (BIA 1998)).

Substantial evidence supports the IJ's conclusions that the events testified to by Huang were not sufficient to support a claim of past persecution. Even if he had been arrested and taken into custody by the police at his family's grocery store, Huang fails to present evidence to support his assertion that it was in retaliation for his political opinions. He avers that the actions were predicated on that basis, yet provides no evidence in support of his claim. Indeed, he admitted that the police arrived at the grocery store on account of unpaid taxes and testified that his arrests arose out of his interference with the police. Likewise, his allegations of mistreatment while a member of the Chinese army -- cleaning the latrine and kitchens, being beaten, and sprayed with feces -- appear to be isolated events and not the kind of systematic mistreatment that rises to the level of persecution. His fears of retaliation by the Chinese army also appear to be more akin to prosecution for desertion than persecution for his political beliefs.

Moreover, Huang's claims of future persecution are severely undercut by his ability to live openly in his community for twenty years. See, e.g., Velásquez v. Ashcroft, 342 F.3d 55, 58 (1st Cir. 2003) (no well-founded fear of persecution where petitioners remained in the country for eight years after the alleged persecution), abrogated on other grounds by Bocova, 412 F.3d at 265 n.2. Furthermore, he provides no evidence that either

he or his father was harassed by the Chinese government after the two incidents at the grocery store in 1979.  See Boukhtouchen v. Gonzáles, 498 F.3d 78, 81 n.3 (1st Cir. 2007) (finding that the reasonableness of a petitioner's fear of future persecution is reduced where members of his family continue to reside there without incident).  Huang testified that he was able to marry, have a child, work at his father's grocery store, apply for a passport, and leave the country unimpeded even through the Chinese immigration proceedings.  His ability to do all of those things provides ample support for the IJ's conclusion that Huang lacks a well-founded fear of future persecution.  See, e.g., Kheireddine v. Gonzáles, 427 F.3d 80, 87 (1st Cir. 2005) (petitioners' ability to obtain passports in their own names "undercuts their claim of persecution").

Accordingly, we deny the petition for review and affirm the decision of the BIA.

**DENIED**.